NUMBER 13-08-457-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 

 

BARBARA O'NEAL, Appellant,

 

v. 


THOMAS FOREHAND, Appellee.

 


On appeal from the 36th District Court 

of Live Oak County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Garza and Vela


Memorandum Opinion by Justice Vela



 This is an appeal from a judgment entered by the trial court in favor of appellee
Thomas Forehand and against his former wife, appellant, Barbara O'Neal, in a suit
involving their 1991 divorce decree. By five issues, O'Neal complains that she was
deprived of her right to a jury trial, that the evidence did not support the trial court's
findings, and that the trial court improperly awarded attorney's fees. We affirm. 

I. Background

 On August 21, 1991, the judge of the 36th District Court in Live Oak County entered
a divorce decree ending the marriage of O'Neal and Thomas. The decree, agreed upon
by the parties, provided for potential future conveyances to O'Neal of post-divorce working
interests and overriding royalty interests acquired by Thomas if: (1) Thomas did not pay
money for the interest acquired; (2) Thomas paid less for the interest than he would have
if the interest had been acquired by a third party; or (3) Thomas acquired the interest
through personal services rendered by him, in whole or in part. 

 On May 19, 2006, O'Neal filed an original petition in the 156th District Court urging
breach of contract, conversion and breach of fiduciary duty claims based upon Thomas's
alleged refusal to comply with certain portions of the divorce decree with respect to post-divorce working interests and overriding royalty interests acquired after the parties' divorce. 
Specifically, O'Neal urged that the parties entered into a marital property contract wherein
Thomas "agreed that with respect to working interests and/or overriding royalties which he
would acquire. . . for less than full and adequate consideration post divorce, the parties
would own equal interests as their separate property." She argued that she is owed one-half of an apportioned share of the overriding royalty interests received by Nueces Oil
through several assignments that occurred after their divorce. 

 Prior to trial, the parties agreed to consolidate the case in the 36th District Court, the
court where the divorce action had been filed. O'Neal had previously requested a jury trial. 
Thomas objected, taking the position that a jury would not be proper because the suit was
one to enforce the divorce decree and a jury trial is not proper under section 9.005 of the
Texas Family Code. See Tex. Fam. Code Ann. § 9.005 (Vernon 2006). (1) The 36th District
Court entered an order determining that O'Neal's suit was a claim for enforcement of the
divorce decree and the trial court removed the case from the jury docket. 

 After a non-jury trial, the trial court entered judgment in favor of Thomas. 
Thereafter, the trial court entered findings of fact and conclusions of law. The trial court
found that:

 1) the divorce decree provided that Thomas agreed that if he acquired any
working interest and/or overriding royalty interests after the entry of the
decree for less than adequate consideration, either personally or through any
company in which he had any interest, then one-half of the interest acquired
would be assigned, transferred or held in trust for O'Neal; 


 2) Thomas was a part owner of Nueces Oil Company;


 3) Nueces Oil acquired either working interests or overriding royalty interests
in oil and gas leases after the decree;


 4) There was no evidence that any working interests or overriding royalty
interests acquired by Nueces Oil after the divorce were acquired for less than
adequate consideration;


 5) Thomas performed personal services to Nueces Oil;


 6) There was no evidence that any of his personal services were
consideration for the acquisition of any working interests or overriding royalty
interests acquired by Nueces Oil after the entry of the divorce decree. 


II. Issue One

A. Factual Background 

 O'Neal complains in her first issue that the trial court erred by denying her
constitutional right to submit her claims to a jury. Prior to trial, Thomas objected to
O'Neal's request for jury trial because section 9.005 of the Texas Family Code precluded
her from demanding a jury trial. Id. The trial court heard arguments on Thomas's motion,
requested additional briefing, took the matter under advisement, and later determined that
the action pleaded was one for enforcement of a divorce decree under the family code. 
See id. Prior to the court's ruling, counsel for O'Neal had filed an agreed motion requesting
that her case be consolidated in the 36th District Court, the court where the decree of
divorce was entered because "section 9.001, Texas Family Code, states that suits involving
a prior decree of divorce be filed in the court that rendered the judgment." When the case
was called for a non-jury trial, counsel made no objection to proceeding without a jury
present.

B. Preservation and Standard of Review

 We review the trial court's denial of a jury trial for an abuse of discretion. Mercedes-Benz Credit Corp. v. Rhyne, 925 S.W.2d 664, 666 (Tex. 1996). In conducting an abuse
of discretion review, we examine the entire record. Id. We find an abuse of discretion only
when the trial court's decision is arbitrary, unreasonable, and without reference to guiding
principles. Id.; Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex.
1985). 

 A party is required to act affirmatively in order to preserve the right to complain on
appeal that he was denied his perfected right to a trial by jury. Sunwest Reliance
Acquisitions Group, Inc. v. Provident Nat'l Assurance Co., 875 S.W.2d 385, 387 (Tex.
App.-Dallas 1993, no writ). If a trial court proceeds to trial without a jury, the party must,
in order to preserve any error by the trial court, "either object on the record to the trial
court's action or indicate affirmatively in the record it intends to stand on its perfected right
to a jury trial." Id. This is because "the right in a civil case is not self-executing: to invoke
and perfect the right to a jury trial in a civil case a party must first comply with the
requirements of rule 216;" once perfected, the right to a jury trial still may be waived
expressly or by a party's failure to act. Id. at 387-88. 

C. Analysis

 The record before us does not show that O'Neal objected to the case going forward
without a jury or that she indicated in any way to the trial court that she intended to stand
on her right to a jury trial. It was Thomas who originally complained to the trial court about
the propriety of a jury trial. Thomas's objection was heard on October 25, 2006. The non-jury trial was held on March 27, 2008. Because O'Neal did not inform the trial court of her
intent to stand on her right to a jury trial, error, if any, has not been preserved. Tex. R. App.
33.1(a). Regardless, even if O'Neal had preserved error, we do not believe the trial court
abused its discretion. The agreed motion, prepared by O'Neal's counsel, showed that she
was invoking the provisions of the family code. Therefore, she was precluded from
demanding a jury trial. See Tex. Fam. Code Ann. § 9.005. Further, the record does not
reflect any act by the trial court during the course of the trial that appeared either arbitrary
or unreasonable. O'Neal's first issue is overruled. 

III. Issues Two Through Four

A. Factual Background

 Thomas Forehand is an owner of Nueces Oil Company. O'Neal was an owner, but
sold her interest in the company in July 1992. At the time of trial, Thomas owned a one-third interest in Nueces Oil, his son, Mikal, owned one-third and his daughter, Robin, also
owned one-third. At trial, O'Neal, Thomas, and Mikal testified as witnesses. O'Neal
introduced portions of the video depositions of Mikal and Thomas. O'Neal's counsel
testified regarding attorney's fees. Thomas's attorney also testified regarding his attorney's
fees. 

 The dispute made the basis of O'Neal's suit arises from two 1992 leases. Thomas
testified that Nueces Oil acquired the two leases in 1992, referred to as the Herring leases. 
The consideration for the Herring leases was a one-sixth royalty, customary terms and
obligations of an oil and gas lease and a cash bonus. Thomas testified that in early 2004-2005 Nueces Oil entered into farmout agreements (2) with AMPAK Oil Company and OGGP
Partners. 

 Mikal testified that to develop these prospects, AMPAK and OGGP each entered
into a farmout agreement with Nueces Oil that covered its 22% leasehold estate in the
Herring lease. AMPAK and OGGP drilled commercially productive wells. Nueces Oil
assigned each an interest in the net revenue and reserved an overriding royalty to itself. 
Mikal stated that Nueces Oil received one hundred dollars an acre to execute the farmout
agreements. According to Mikal, his father did not perform any personal services with
respect to the agreement. In fact, he said that he was unaware of any personal service
performed by Thomas.

 O'Neal testified that she had not been assigned overriding royalty interest in the
wells in issue. 

B. Standard of Review

 In her second, third, and fourth issues, O'Neal argues that she established her
entitlement to a share of the interests earned as a matter of law, or that the trial court's
findings that she was entitled to nothing were against the great weight and preponderance
of the evidence. 

 Findings of fact in a case tried to the court have the same force and dignity as a
jury's verdict upon jury questions. Anderson v. City of Seven Points, 806 S.W.2d 791, 794
(Tex. 1991); Ashcraft v. Lookadoo, 952 S.W.2d 907, 910 (Tex. App.-Dallas 1997, writ
denied) (en banc). Fact findings are not conclusive when a complete reporter's record
appears in the record. Middleton v. Kawasaki Steel Corp., 687 S.W.2d 42, 44 (Tex.
App.-Houston [14th Dist.]), writ ref'd n.r.e., 699 S.W.2d 199 (Tex. 1985) (per curiam). We
review a trial court's fact findings for legal and factual sufficiency of the evidence. Ortiz v.
Jones, 917 S.W.2d 770, 772 (Tex. 1996). We review the conclusions drawn from the facts
to determine their correctness. Ashcraft, 952 S.W.2d at 910. The standard of review for
claims of legal and factual sufficiency of the evidence govern non-jury trials on the merits. 
IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp., 938 S.W.2d 440, 445 (Tex. 1997).

 When a party attacks the legal sufficiency of an adverse finding on an issue on
which it has the burden of proof, the party must demonstrate on appeal that the evidence
establishes, as a matter of law, all vital facts in support of the issue. Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 241 (Tex. 2001). "The final test for legal sufficiency must always
be whether the evidence at trial would enable reasonable and fair-minded people to reach
the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). In
making this determination, we must credit favorable evidence if a reasonable fact finder
could, and disregard contrary evidence unless a reasonable fact finder could not. Id.

 When a party attacks the factual sufficiency of an adverse finding on an issue on
which it has the burden of proof, the party must demonstrate on appeal that the adverse
finding is against the great weight and preponderance of the evidence. Francis, 46
S.W.3d at 242. We set aside a verdict only if the evidence is so weak or if the finding is
so against the great weight and preponderance of the evidence that it is clearly wrong and
unjust. Id.; see Pool v. Ford Motor Co., 715 S.W.2d 629, 635 (Tex. 1986); Cain v. Bain,
709 S.W.2d 175, 176 (Tex. 1986).

C. Analysis

 1. Issues Two and Three

 By her second and third issues, O'Neal urges that the trial court erred in failing to
find that: (1) Thomas did not pay money for the working and/or overriding royalty interests
Nueces Oil acquired; and (2) Thomas provided personal services that resulted in Nueces
Oil acquiring working and/ or overriding royalty interests. According to O'Neal, the three
conditions that would constitute "less than full consideration" under the decree are that
Thomas: (1) did not pay money for interest so acquired; (2) paid a sum less than the
interest could have been acquired by a third party; or (3) he acquired the interest for
personal services he rendered. 

 At the end of trial, counsel for O'Neal conceded that there was no evidence that
Thomas paid a lesser sum than "could have been acquired by a third party," and
abandoned that theory. Counsel for O'Neal stated at trial that the scenario he was relying
upon was that Thomas was required to pay O'Neal because his interest had been
acquired because of the personal services he rendered. The trial court found that
Thomas had rendered personal services to Nueces Oil, but there was no evidence that
the personal services were in consideration for interests acquired by Nueces Oil. The trial
court made no finding with regard to whether Thomas had paid money for the interest
Nueces Oil acquired. 

 The evidence at trial was that Nueces Oil, not Thomas, had acquired an overriding
royalty interest. The issue before the trial court was not whether Thomas, himself, did or
did not pay money. Regardless, the evidence at trial was that only Nueces Oil acquired
an overriding royalty interest. In fact, there was no evidence that Thomas individually paid
any money for the interest Nueces Oil acquired. The testimony at trial was that Nueces
Oil, not Thomas, acquired the leases for consideration and properly reserved to itself an
overriding royalty after the wells proved to be commercially productive and an assignment
had been made. We overrule issue two.

 In her third issue, O'Neal argues that the great weight and preponderance of the
evidence established that Thomas provided personal services resulting in Nueces Oil 
acquiring a working and or overriding royalty interest post-divorce. 

 At trial, Thomas was asked if he "provided a lot of personal services to sell these
deals" to AMPAK. He replied that he provided no personal services, because he was in
law school at the time. Mikal testified that his father's personal services "did not come into
play" in arranging the farmout agreement. From this testimony, the trial court could have
determined that no personal services of Thomas were required in arranging the farmout
agreement from which the overriding royalty interests were generated. 

 O'Neal points to testimony at Mikal's deposition where Mikal testified that he could
not make a decision in Nueces Oil Company alone. With regard to AMPAK, Mikal said
that his father "was in the loop." Assuming this evidence could be construed to mean that
Thomas generally provided personal services to Nueces Oil, there was, however, no
evidence that the services were consideration for the reservation of the overriding royalty
interests involved in this case. The trial court heard the evidence before it and was in the
best position to judge the credibility of the witnesses. O'Neal did not establish as a matter
of law that Thomas paid no money for the mineral interests acquired by Nueces Oil or that
his personal services resulted in Nueces Oil acquiring the interests at issue. The trial
court's findings were not against the great weight and preponderance of the evidence. 
We overrule issues two and three.

 2. Issue Four

 O'Neal argues by her fourth issue that the trial court erred because she established
as a matter of law that Nueces Oil provided personal services that resulted in it obtaining
working and/or overriding royalty interests and that the trial court's failure to so find is
against the great weight and preponderance of the evidence. O'Neal claims that it is
undisputed that the oil company provided personal services. In general, a corporation
cannot perform personal services. Tex. Int'l Prods. v. Mustex, Inc., 368 S.W.2d 27, 30
(Tex. App.-Fort Worth 1963, no writ). Regardless, the issue in this case was whether
Thomas performed personal services, not Nueces Oil. The pertinent provision of the
divorce decree stated ". . . and/or if such interest is acquired for personal services
rendered by him, in whole or in part." (emphasis added). It does not appear that this
issue was raised by O'Neal or considered by the trial court. Therefore, it is waived Tex.
R. App. P. 33.1. We overrule O'Neal's fourth issue.

V. Attorney's Fees 

 O'Neal argues by her fifth issue that the attorney's fees awarded to Thomas were
improper because no statute or contract allows such recovery. She also argues that the
trial court erred in refusing to make additional findings of fact with regard to the attorney's
fee issue as well as other points in the case. 

 After hearing evidence by the parties, the trial court awarded Thomas $29,425.00
in attorney's fees. The trial court did not make specific findings of fact or conclusions of
law with respect to the attorney's fee award, except to state that Thomas should be
awarded attorney's fees pursuant to "appropriate civil statutes and the Family Code." 

 After the trial court files original findings of fact and conclusions of law, any party
may request specified additional or amended findings. Tex. R. Civ. P. 298. The trial court
shall file any additional findings and conclusions that are appropriate within ten days after
a request is filed. Id. If the record shows that the complaining party did not suffer injury,
the trial court's failure to make such additional findings does not require reversal. 
Johnston v. McKinney Am., Inc., 9 S.W.3d 271, 277 (Tex. App.-Houston [14th Dist.] 1999,
pet. denied); see Tamez v. Tamez, 822 S.W.2d 688, 692 (Tex. App.-Corpus Christi 1991,
writ denied). To obtain a reversal, appellant must show from the record that the trial
court's refusal to file additional findings of fact and conclusions of law, as requested, was
reasonably calculated to cause and did cause rendition of an improper judgment.
Doncaster v. Hernaiz, 161 S.W.3d 594, 608 (Tex. App.-San Antonio 2005, no pet.);
Tamez, 822 S.W.2d at 693. If the trial court's refusal to make additional findings does not
prevent an adequate presentation on appeal, there is no reversible error. Doncaster, 161
S.W.3d at 608. The issue is whether the circumstances are such that appellant is forced
to guess at the reasons for the trial court's decision. Id.

 Here, while O'Neal filed documents requesting additional findings, she did not
actually specify the findings she wanted the trial court to make. Her request looked more
like proposed jury issues. Regardless, the trial court's finding was that Thomas was
awarded attorney's fees pursuant to the family code and other appropriate civil statutes. 
The family code expressly provides for an award of attorney's fees in proceedings to
enforce the decree. Tex. Fam. Code Ann. § 9.014 (Vernon 2006); In re Marriage of
Malacara, 223 S.W.3d 600, 603 (Tex. App.-Amarillo 2007, no pet.). O'Neal argued in this
Court that the fees were not authorized under the family code or under contract law and
briefed those issues on appeal. She also thoroughly briefed why she believed Thomas
was not entitled to attorney's fees as sanctions. 

 We review the trial court's award of attorney's fees for an abuse of discretion. See
Chavez v. Chavez, 12 S.W.3d 563, 566 (Tex. App.-San Antonio 1999, no pet.) (involving
the review of award of attorney's fees in an enforcement proceeding is under an abuse
of discretion standard); Schneider v. Schneider, 5 S.W.3d 925, 930 (Tex. App.-Austin
1999, no pet.) (same). A trial court abuses its discretion when it acts arbitrarily,
unreasonably, or without reference to any guiding principles. In his answer, Thomas
requested attorney's fees under the family code, although he pleaded for fees under the
wrong section of the code. (3) He also pleaded generally for attorney's fees. The trial court
had authority under section 9.014 to award attorney's fees in this action. See Tex. Fam.
Code Ann. § 9.014. A general request for attorney's fees in the prayer of the pleading is
itself sufficient to authorize the award of attorney's fees. Tull v. Tull, 159 S.W.3d 758, 762
(Tex. App.-Dallas 2005, no pet.). The trial court did not err in failing to make additional
fact findings. However, even if the trial court did err, the error was harmless because
O'Neal was able to adequately present her issues to this Court. Accordingly, the trial court
did not abuse its discretion in awarding attorney's fees. We overrule O'Neal's fifth issue.

VI. Conclusion 

 The judgment of the trial court is affirmed.

 

 ROSE VELA

 Justice



Memorandum Opinion delivered and 

filed this 2nd day of July, 2009.








 
1. Section 9.005 states: "A party may not demand a jury trial if the procedures to enforce a decree of
divorce or annulment provided by this subchapter are invoked". Tex. Fam. Code Ann. § 9.005 (Vernon 2006).
2. Thomas described a farmout agreement as one "when you own a leasehold, as opposed to owning
minerals and royalties. You own a leasehold that you acquired from someone that holds the mineral and oil
royalties. And you want to turn that leasehold--push it off to--a portion over to a company to get some wells
drilled."
3. Thomas improperly pleaded for attorney's fees under sections 106.001 and 106.002 of the family
code. Tex. Fam. Code Ann. §§ 106.001-.002 (Vernon 2008). These sections deal with attorney's fees and
costs in suits involving the parent-child relationship.